IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

LAL BHATIA, # 97562-011                                    **PETITIONER/PLAINTIFF**

**VERSUS**                              CIVIL ACTION NO. 5:15cv100-DCB-MTP

UNITED STATES OF AMERICA;
IMMIGRATION AND CUSTOMS ENFORCEMENT,
an entity;
JEH CHARLES JOHNSON, Secretary of the
Department of Homeland Security;
SARAH R. SALDANA, Director of Immigration and
Customs Enforcement;
DAVID RIVERA, Field Office Director for the
New Orleans Field Office of ICE;
DAVE BERKEBILE, Warden for
Adams County Correctional Center.                **RESPONDENTS/DEFENDANTS**



SOUTHERN DISTRICT OF MISSISSIPPI
FILED
OCT 19 2015
ARTHUR JOHNSTON
BY _____ DEPUTY

## PETITIONER/PLAINTIFF'S MEMORANDUM IN SUPPORT FOR PRELIMINARY INJUNCTION

i

## Table of Contents

Table of Authorities.....................................................................................................iii

**INTRODUCTION**..................................................................................................1

**STATEMENT OF NATURE OF THE PROCEEDING**...................................2

**STATEMENT OF THE ISSUE TO BE RULED UPON BY THE COURT**...4

**SUMMARY OF ARGUMENT**..............................................................................4

**ARGUMENT**..........................................................................................................7

**I.     MR. BHATIA IS LIKELY TO PREVAIL ON THE MERITS**.............7

    A.     Defendants/Respondents' Violation of the Take Care Clause7

    B.     Defendants/Respondents' Violation of the Due Process Clause.............................................................................................11

    C.     Defendants/Respondents' Violation of the Administrative Procedures Act (APA)............................................................. 16

**II.    MR. BHATIA WILL INCUR IRREPARABLE INJURIES**.................22

**III.   THE BALANCE OF EQUITIES TIPS IN FAVOR OF GRANTING THE INJUNCTION**..............................................................................23

**IV.    THE PUBLIC INTEREST NECESSITATES A PRELIMINARY INJUNCTION**................................................................................... 25

**CONCLUSION**....................................................................................................27

**Table of Authorities**

<u>Cases:</u>

*Abbot Laboratories v. Gardener*, 387 U.S. 136 (1967).......................................................16

*Adams v. Richardson*, 480 F.2d 1159, 1164 (D.C. Cir. 1973)...........................................10

*Angelus Milling Co., v. Comm'r of Internal Revenue*, 325 U.S. 293, 296 (1945)..........8

*API v. EPA*, 198 F.3d 275, 278 (D.C. Cir. 2000)..............................................................21

*Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1023 (D.C. 2000)................................20

*Blum v. Yaretsky*, 457 U.S. 991, 1000 (1982)..................................................................23

*Brown v. Miller*, 519  F.3d 231, 237 (5ᵗʰ Cir. 2008)........................................................12

*Castellano v. Fragozo*, 352 F.3d 939, 942 (5ᵗʰ Cir. 2003)...........................................12,15

*CBS v. United States*, 316 U.S. 407, 416 (1942)...............................................................10

*Chamber of Commerce v. DOL*, 174 F.3d 206, 212 (D.C. Cir. 1999)..............................20

*Chevron, U.S.A., Inc., v. NRDC*, 467 U.S. 837, 842 (1984)............................................21

*Christopher Village v. Retsinas*, 190 F.3d 310, 314-15 (5ᵗʰ Cir. 1999)...........................23

*Chrysler Corp. v. Brown*, 441 U.S. 281, 301-03 (1979)...................................................19

*Crowley Caribbean Transp., Inc., v. Pena*, 37 F.3d 671, 676 (D.C. Cir. 1994)..............9

*Demore v. Kim*, 538 U.S. 510 (2003)....................................................................11,13,14,23

*Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9ᵗʰ Cir 2001)..........................................12

*EEOC v. Service Temps Inc.*, 679 F.3d 323, 338 (5ᵗʰ Cir. 2012)......................................3

*Ex parte Vallandigham*, 28 F. Cas. 874, 878-79 (C.C.S.D. Ohio 1863).......................7

*FTC v. Dean Foods Co.*, 384 U.S. 597, 606 n.5 (1966)...................................................23

*Gate Guard Services, LP., v. Perez; Case No. 14-40585*, (5ᵗʰ Cir. July 2, 2015)...........6

*General Elec. Co., v. EPA*, 290 F.3d 377, 383 (D.C. Cir. 2002).....................................20

*Gregory v. City of Louisville*, 444 F.3d 725, 744-45 (6ᵗʰ Cir. 2006).............................12,15

*Hashmi v. Attorney General of the U.S.*, 531 F.3d 256, 262 (3ʳᵈ Cir. 2008).................17

*Heckler v. Chaney*, 470 U.S. 821 (1985)........................................................................8,9

*INS v. Abudu*, 485 U.S. 94, 105 (1988)..........................................................................17

*Janvey v. Alguire*, 647 F.3d 585, 600-01 (5ᵗʰ Cir. 2001)................................................23

*Jones v. Cannon*, 174 F.3d 1271, 1289 (11th Cir. 1999)....................................12

*Judulang v. Holder*, 132 S.Ct. 476, 477 (2011)..................................................17

*Kendall v. United States*, 37 U.S. (12 Pet.) 524 (1833)..................................8,11

*Kucana v. Holder*, 130 S.Ct. 827, 840 (2010)....................................................17

*Limone v. Condon*, 372 F.3d, 44-45 (1st Cir. 2004)........................................6,12

*Lowery v. Cnty. Of Riley*, 522 F. 3d 1086, 1090-92 (10th Cir. 2008)...............15

*Masiah v. Mukasey*, 536 F.3d 370, 376 (5th Cir. 2008).....................................17

*Massachusetts v. EPA*, 549 U.S. 497, 518, 525-26 (2007)..............................23

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).............................................5,11

*Medellin v. Texas*, 552 U.S. 491, 525 (2008).........................................................8

*Miller v. Pate*, 386 U.S. 1, 7 (1967)...................................................................13

*Mooney v. Holohan*, 294 U.S. 103, 112, (1935).........................................4,12,13

*Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)....................................................5

*Morton v. Ruiz*, 415 U.S. 199, 232 (1974).....................................................19,20

*Napue v. Illinois*, 360 U.S. 264, 269 (1959)......................................................13

*Nat'l Ass'n of Farmworkers Org. v. Marshall*, 628 F.2d 604, 606 (D.C. Cir. 1980).....22

*National Mining Ass'n v. McCarthy*, 758 F.3d 243, 251-52 (D.C. Cir. 2014).............21

*Pierce v. Gilchrist*, 359 F. 3d 1279, 1293 (10th Cir. 2004)................................12

*Reno v. Flores*, 507 U.S. 292, 301-302 (1993)..............................................12,14

*Ricciuti v. NYC Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)..................12,14

*Role Models Am., Inc., v. White*, 317 F.3d 327, 328-29 (D.C. Cir. 2003).....................22

*Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1281 (11th Cir. 2002)........................12

*Shell Offshore Inc. v. Babbitt*, 238 F.3d 622, 628 (5th Cir. 2001)....................20

*Stemler v. City of Florence*, 126 F. 3d 856, 872 (6th Cir. 1997)........................15

*United States v. Allen*, 954 F.2d 1160, 1166 (6th Cir. 1992)............................10

*United States v. El-Mezain*, 664 F.3d 467, 567 (5th Cir. 2011).............................5

*United States v. Marine Shale Processors*, 81 F.3d 1329, 1359 (5th Cir. 1996)..............26

*United States v. Salerno*, 481 U.S. 739, 746 (1987).........................................12

*Virginian Railway v. System Federation No. 40, AFL*, 300 U.S. 515, 552, (1937)........ 26

*Washington v. Wilmore*, 407 F.3d 274, 282 (4th Cir. 2005)............................12

*Whitlock v. Brueggemann*, 682 F. 3d 567, 585 (7th Cir. 2012)........................12

*Wilson v. Lawrence Cnty.*, 260 F.3d 946, 954 (8th Cir. 2001)........................12,15

*Winter v. NRDC*, 555 U.S. 7, 20 (2008)...............................................3

*Yarris v. County of Deleware*, 465 F. 3d 129, 138-39 (3d Cir. 2006)............................12

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637 (1952)............................8,11,21

## Statutes:

5 U.S.C. § 701.........................................................................16

5 U.S.C. § 704.........................................................................16

5 U.S.C. § 706.........................................................................4,16,17

5 U.S.C. § 706(2)(a)...................................................................21

8 U.S.C. § 1103(a).....................................................................3,24

8 U.S.C. § 1226(c).....................................................................3,13,21,24

8 U.S.C. § 1227(a)(2)(A)(iii)..........................................................13

## Other Authorities

1 *The Records of the Federal Convention of 1787* (Max Farrand rev. ed., 1966)................7

2 James Wilson, *Lectures on Law part 2, in Collected Works of James Wilson* 829, 878 (Kermit L. Hall & Mark David Hall eds., 2007)......................................7

Memorandum from Brian M. O' Leary, Chief Immigration Judge, *impact of Secretary Johnson's Memorandum on immigration court hearing procedures.* (April 6, 2015)...............................................................................3

Christopher N. May, *Presidential Defiance of Unconstitutional Laws*..............................8

English Bill of Rights of 1689, Art. 1...............................................3

Gary J. Edles, *The Continuing Need for an Administrative Conference*, 50 Admin. L. Rev. 101, 107 (1998)...................................................................16

Jack Rakove, *Original Meanings* 20 (1996)..........................................7

Memorandum from Jeh Charles Johnson, Secretary, Department Homeland Security, *Policies for the Apprehension, Detention and Removal of Undocumented Immigrants* (November 20, 2014)...............................................2,

Memorandum from John Morton, Director, U.S. Immigration and Customs Enforcement, *Prosecutorial Discretion: Certain Victims, Witnesses, and Plaintiffs.* (June 11, 2011).................................................................................................. 2,3

Memorandum from Peter Vincent, Principal Legal Advisor, U.S. Immigration and Customs Enforcement, *on Case-by-Case Review of all Incoming cases to all Chief Counsel and Office of Principal Legal Advisor* (November 17, 2011)..................................16

Memorandum from Riah Ramlogan, Acting Principal Legal Advisor, *Impact of Secretary Johnson's Memorandum on issues related to Immigration Custody or Proceedings. (April 6, 2015)*.............................................................................. 3

The White House, Office of the Press Secretary, Remarks by the President in Immigration Town Hall – Miami, FL (February 25, 2015),............................................3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## WESTERN DIVISION

LAL BHATIA, # 97562-011                                  PETITIONER/PLAINTIFF

**VERSUS**                          CIVIL ACTION NO._____

UNITED STATES OF AMERICA;
IMMIGRATION AND CUSTOMS ENFORCEMENT,
an entity;
JEH CHARLES JOHNSON, Secretary of the
Department of Homeland Security;
SARAH R. SALDANA, Director of Immigration and
Customs Enforcement;
DAVID RIVERA, Field Office Director for the
New Orleans Field Office of ICE;
DAVE BERKEBILE, Warden for
Adams County Correctional Center.                RESPONDENTS/DEFENDANTS

### PETITIONER/PLAINTIFF'S MEMORANDUM IN SUPPORT FOR PRELIMINARY INJUNCTION

### INTRODUCTION

Defendants/Respondents' through DHS-ICE-ERO-New Orleans' "rule," to honor

Plaintiff/Petitioner Lal Bhatia's request not to subject him to ICE custody based on deliberate

fabrications and Wig's engineering [1] *after* he is placed in ICE custody based on those

fabrications, injects a Queen of Hearts' quality of justice found in Alice-in-Wonderland. Despite

conceding on over 27 occasions – dating as far back as September 2010 and as recently as

August 2015 – that their reports and records are based on deliberate fabrications and Wig's

engineering; yet, they have no compunction to deliberately subject Mr. Bhatia to immigration

---

[1]   Mon Wig, and others engineered the fabricated charges that led to the convictions, to conceal Mon Wig's specific money laundering crimes using the services of BCCI-Allied Group. ("Wig's engineering"). "Mon Wig" or "Wig" refers to Manmohan K. Wig, who operates in the United States under one of his alter-egos, Wig Properties, LLC., Tax Identification No., 91-1789152, located at 4811, 134th Place, S.E., Bellevue, Washington, 98006. Mon Wig is Mr. Bhatia's father-in-law's cousin. *See* Complaint ("Comp") at ¶ 1 n. 1.

1

custody based on those deliberate fabrications. Defendants/Respondents have turned the Constitution, Congress's and DHS-ICE's directives on its head by suggesting that regardless, Mr. Bhatia will continue to endure additional extra-judicial detention and executive rendition based on deliberate fabrications and Wig's engineering.

This is not how the American system of justice works. The constitutional separation of powers requires Congress to pass a law and the Executive to execute it; the Executive can no more pass its own laws (or "execute" nonexistent ones) than Congress can exercise its power to pass laws subjecting Mr. Bhatia to imminent immigration custody based on deliberate fabrications and Wig's engineering. This unilateral lawmaking exercise violates the Take Care Clause; Due Process Clause of the United States Constitution; and the Administrative Procedures Act ("APA"). This Court's emergency intervention is required because, among other reasons, it has been impossible to restrain Defendants/Respondents' lawlessness that is prejudicial especially when they have clearly stated that Mr. Bhatia will endure immigration custody based on deliberate fabrications and Wig's engineering.

## STATEMENT OF NATURE OF THE PROCEEDING

On November 20, 2014, Department Homeland Security Secretary, Jeh Charles Johnson issued new guidelines on the Department's civil immigration enforcement and detention priorities. The new memorandum, entitled *Policies for the Apprehension, Detention and Removal of Undocumented Immigrants* ("November 20 Priorities Memo") went into effect on January 5, 2015. *See* Comp. ¶ 11. The November 20 Priorities Memo specified the categories of non-citizens at the greatest risk of deportation, provided guidance on the exercise of prosecutorial discretion by immigration officers, whom to detain, and imposed new data tracking requirements. *Id.* Based on the June 11, 2011 memorandum by ICE Director, John Morton entitled, *Prosecutorial Discretion: Certain Victims, Witnesses, and Plaintiffs*, the November 20 Priorities Memo emphasized that: "it is against ICE policy to [detain] an individual known to be the immediate victim or witness to a crime...". *Id.* at ¶ 12. It did not state that DHS or ICE could detain individuals by deliberately relying on conclusively established fabrications. *Id.*

2

Around July 27, 2015, Mr. Bhatia made an extensive and detailed submission informing DHS-ICE-ERO – New Orleans Field Office that as on over 27 occasions DHS/ICE have conceded that their records are based on fabrications, he should not be subjected to any immigration custody. *Id.* ¶¶ 14-16. Around July 30, 2015, that Request was returned. Attached to it was a "post-it" note from DHS/ICE/ERO – New Orleans Field Office stating: "Cannot honor this request until you are in immigration custody or proceedings." *See* Comp. ¶ 17.

Around August 6, 2015, by resubmitting the July 27, 2015 request, Mr. Bhatia responded stating that the decision to delay honoring the request until he is either in "Immigration Custody or Proceedings," should be reconsidered for two reasons: (A) the decision is not supported by DHS published policy; and indeed, violates the rule of law; and, (B) it defeats the purpose of not being subjected to "Immigration Custody or Proceedings," by relying on deliberate undisputed fabrications. *Id.,* Comp. at ¶¶ 19-26.

Defendants/Respondents, in particular, DHS-ICE-ERO – New Orleans, Mr. Bhatia averred that, by relying exclusively and solely on deliberate fabrications and Wig's engineering to subject Mr. Bhatia to imminent immigration custody, DHS-ICE-ERO – New Orleans ignores the directives of: (1) 8 U.S.C. §§ 1103(a), 1226(c); (2) Memorandum from John Morton, Director, U.S. Immigration and Customs Enforcement, *Prosecutorial Discretion: Certain Victims, Witnesses, and Plaintiffs.* (June 11, 2011); *see* Comp. ¶ 12, (3) Memorandum from Jeh Charles Johnson, Secretary, Department Homeland Security, *Policies for the Apprehension, Detention and Removal of Undocumented Immigrants* (November 20, 2014); *see* Comp. ¶ 11, (4) Memorandum from Riah Ramlogan, Acting Principal Legal Advisor, *Impact of Secretary Johnson's Memorandum on issues related to Immigration Custody or Proceedings.* (April 6, 2015); Comp. ¶ 19, (5) Memorandum from Brian M. O' Leary, Chief Immigration Judge, *impact of Secretary Johnson's Memorandum on immigration court hearing procedures.* (April 6, 2015); Comp. ¶ 19, and, (6) President Obama's confirmation on February 25, 2015, that "[a]ny individual ICE official or border patrol who aren't paying attention to our new directives" would "be answerable to the head of the [DHS]," and if employees "don't follow the policy,

3

there are going to be consequences to it," Comp. at ¶ 25. Defendants/Respondents, through DHS-ICE-ERO – New Orleans, thus, continue to violate Mr. Bhatia's Due Process Rights; fails to faithfully execute and Take Care of the laws, while they have unconstitutionally created their own, in violation of APA by acting contrary to Immigration and Naturalization Act ("INA") and other laws enacted by Congress as well as DHS directives.

## STATEMENT OF THE ISSUE TO BE RULED UPON BY THE COURT

The issue is whether Defendants/Respondents should be preliminarily enjoined when they ignore Congress's objectives and DHS's directives to subject Mr. Bhatia to immigration custody by relying on deliberate fabrications and Wig's engineering? "[T]he question of whether to award injunctive relief is generally within the trial court's discretion." *EEOC v. Service Temps Inc.*, 679 F.3d 323, 338 (5th Cir. 2012). "A plaintiff seeking a preliminary injunction must establish, [I] that he is likely to succeed on the merits, [II] that he is likely to suffer irreparable harm in the absence of preliminary relief, [III] that the balance of equities tips in his favor, and [IV] that an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008). Mr. Bhatia meets that four-part standard.

## SUMMARY OF ARGUMENT

I.      Mr. Bhatia is likely to prevail on the merits. Despite conclusively establishing that Respondents/Defendants, based on deliberate fabrications and Wig's engineering, will subject Mr. Bhatia to immigration custody, Defendants/Respondents who barely have enough legitimate evidence to charge Mr. Bhatia with removability, suggest that they will contrary to Congressional objectives and DHS/ICE's policy and procedures, intentionally rely on fabrications and Wig's engineering to subject Mr. Bhatia to imminent immigration custody, and Mr. Bhatia has no constitutional, statutory or regulatory remedy.

The Take Care Clause enshrines the ancient principle that the Executive cannot dispense with laws it dislikes, and the APA provides that a "person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statue, is entitled to judicial review thereof." 5 U.S.C. § 706.  Here,

4

Respondents/Defendants have unequivocally stated that Mr. Bhatia would be subjected to immigration custody based on deliberate fabrications and Wig's engineering. They have done so in contravention of statutory objectives and in the face of well-settled principles that DHS-ICE-ERO – New Orleans are prohibited from detaining an individual based on deliberate fabrications. *Cf., Mooney v. Holohan,* 294 U.S. 103, 112, (1935). That is the paradigmatic example of impermissible executive lawmaking, as demonstrated by the Supreme Court's precedent in violation of the Take Care Clause.

Due Process under the Constitution is an inherently flexible concept, and the specific process due in a particular circumstance depends upon the context in which the right is asserted. *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972). Resolution of a due process challenge requires the consideration and weighing of three factors: the private interest of the person asserting the lack of due process; the risk of erroneous deprivation of that interest through use of existing procedures and the probable value of additional or substitute procedural safeguards; and the competing interests of the government, including the financial, administrative, and other burdens that would be incurred were additional safeguards to be provided. *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976) accord *United States v. El-Mezain,* 664 F.3d 467, 567 (5th Cir. 2011).

Because Mr. Bhatia has a liberty interest not to be subjected to immigration custody based on deliberate fabrications and Wig's engineering, and the record is sufficiently developed to establish that the balance of equities favors Mr. Bhatia's protected liberty interests and as the imminent immigration custody based on deliberate fabrications and Wig's engineering *cannot* be justified nor narrowly tailored to serve a compelling government interest. Comp. at ¶¶ 46-55. Defendants/Respondents' also violated the Due process clause.

Respondents/Defendants also violate the APA in two respects. They violate the procedural requirements of the APA because they have not only abrogated DHS directives, but instead they created there own version without notice and comment. They have also violated the substantive requirements of the APA because it is contrary to statutory regime

5

created by Congress and well-settled precedent to ensure that Mr. Bhatia is not subjected to immigration custody based on deliberate fabrications and Wig's engineering.

II.     Absent a preliminary injunction, Plaintiff/Petitioner will be irreparably injured. Defendants/Respondents have acted and have threatened to act to unlawfully deprive Mr. Bhatia of his liberty interests. Every one of the courts of appeal to address this question have rejected Defendants/Respondents' position: "[I]f any concept is fundamental to our American system of justice, it is that those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not commit." *Limone v. Condon,* 372 F.3d, 44-45 (1st Cir. 2004) (citing other circuits). This court should find, consistent with the uniform and well-settled authority, that by deliberately relying on fabrications to subject an individual to immigration custody is unconstitutional, and that Defendants/Respondents who engage in this misconduct will not be permitted and enjoined for causing an unlawful deprivation of liberty. Second, it will be virtually impossible to "unscramble the egg" once Defendants/Respondents unlawfully place Mr. Bhatia in immigration custody. Mr. Bhatia relies on Defendants/Respondents to faithfully and accurately determine his immigration status to subject him to imminent immigration custody, if required. Mr. Bhatia will be harmed if Defendants/Respondents are allowed to flout that responsibility, by ignoring Congressional objectives and DHS-ICE directives by relying on deliberate fabrications and Wig's engineering to detain him.

III.     The balance of equities tips in Mr. Bhatia's favor. In *Gate Guard Services, LP., v. Perez;* Case No. 14-40585, slip opinion, at * 1 (5th Cir. July 2, 2015), the Fifth Circuit Court of Appeals recently held: "It is often better to acknowledge an obvious mistake than defend it. When the government acknowledge mistakes, it preserves public trust and confidence. It can start to repair the damage done by erroneously, indeed vindictively, attempting to sanction an innocent [individual]. Rather than acknowledge its mistake, however, the government here chose to defend the indefensible in an indefensible manner." Clearly, there is no overwhelming need for DHS-ICE-ERO-New Orleans', contrary to DHS/ICE directives, to

unlawfully subject Mr. Bhatia to imminent immigration custody. No principle of equity countenances such unilateral capriciousness.

IV.     Finally, the public interest necessitates a preliminary injunction. First, Defendants/Respondents unlawfulness would be virtually impossible to reverse once Mr. Bhatia is unlawfully placed in ICE custody. Second, Defendants seek to reshape the separation of powers in this case, potentially allowing wholesale revisions of the United States Code and DHS directives. The public and Mr. Bhatia deserve a reasoned and unhurried judicial evaluation before this vision becomes a reality. Third, a preliminary injunction followed by a permanent injunction would serve the public interest by protecting the rule of law and well-settled precedent.

## **ARGUMENT**

## I.     **MR. BHATIA IS LIKELY TO PREVAIL ON THE MERITS.**

### A.     Defendants/Respondents Violation of the Take Care Clause.

The Take Care Clause has its roots in the dispute between King James II and Parliament in the late 17th Century. At the time, English monarchs claimed the power to "suspend" laws of Parliament (abrogating the law completely) or to "dispense" with such laws (nullifying the law in particular cases). King James's use of these powers infuriated Parliament, and he was overthrown in the Glorious Revolution of 1688. The subsequent monarchs, William and Mary, agreed to the English Bill of Rights, which stripped the monarchy of all authority to suspend or dispense with laws. *See* English Bill of Rights of 1689, Art. 1 ("[T]he pretended power of suspending of laws, or the execution of laws, by regal authority, without consent of the parliament, is illegal.") [2]

The Glorious Revolution had a profound influence on America's Constitutional Convention. *See* Jack Rakove, *Original Meanings* 20 (1996). For instance, the Framers unanimously rejected a proposal to grant dispensation powers to the Executive. *See* 1 *The Records of the Federal Convention of 1787*, at 103-104 (Max Farrand rev. ed., 1966). And historical

---

2   *See also e.g. Ex parte Vallandigham*, 28 F. Cas. 874, 878-79 (C.C.S.D. Ohio 1863).

evidence suggest that the Take Care Clause was understood by the founding generation to expressly repudiate the Executive's ability to suspend or dispense with Acts of Congress. *See* 2 James Wilson, *Lectures on Law part 2*, in *Collected Works of James Wilson* 829, 878 (Kermit L. Hall & Mark David Hall eds., 2007) (explaining that the Executive has "authority, not to make, or alter, or dispense with the laws, but to execute and enforce the laws, which [are] established"); Christopher N. May, *Presidential Defiance of Unconstitutional Laws* 16 (1998) (explaining that the Take Care Clause "is a succinct and all-inclusive command through which the Founders sought to prevent the executive from resorting to any of the panoply of devices employed by English kings to evade the will of Parliament").

Supreme Court precedent makes clear that the Take Care Clause is judicially enforceable against executive invocations of dispensing power. For example, in *Kendall v. United States*, 37 U.S. (12 Pet.) 524 (1833), the Court affirmed mandamus to a cabinet official and ordered him to settle claims with mail contractors as required by an Act of Congress. The cabinet official argued that he could ignore the Act because the executive has the exclusive duty to execute laws, *id.* at 545-47, 612, but the Court disagreed.

> To contend that the obligation imposed on the President to see the laws are faithfully executed, implies a power to forbid their execution, is a novel construction of the [C]onsitution and entirely inadmissible.

*Id.* at 613, *see also Medellin v. Texas*, 552 U.S. 491, 525 (2008) (the Executive has "an array' of discretionary obligations to enforce international law, but unilaterally converting a non-self-excuting treaty into a self-executing one is not among them"); *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637 (1952) (Jackson, J., concurring) ("When the President takes measures incompatible with the expressed or implied will of Congress, his power is at its lowest ebb, for then he can rely only upon his own constitutional powers minus any constitutional powers of Congress over the matter."); *Angelus Milling Co., v. Comm'r of Internal Revenue*, 325 U.S. 293, 296 (1945) ([E]xplicit statutory requirements . . . must be observed and are beyond the dispensing power of Treasury officials.").

8

Defendants/Respondents through DHS-ICE-ERO-New Orleans have unlawfully exercised the dispensing of power in violation of the Take Care Clause. While they may claim "prosecutorial discretion," to detain Mr. Bhatia, such a claim does not afford the executive a blank check to dispense with the law by deliberately relying on material fabrications. The seminal Supreme Court's decision addressing prosecutorial discretion, *Heckler v. Chaney*, 470 U.S. 821 (1985), upheld one particular exercise of executive power – the executive's ability to invoke prosecutorial discretion as a basis for non-enforcement. But in doing so, *Chaney* made clear that there are real and judicially enforceable limits on the executive's ability to invoke prosecutorial discretion. In particular, the executive cannot unilaterally, "consciously and expressly adopt a general policy" to discard Congressional intent or DHS directives and replace that with a policy to subject Mr. Bhatia to immigration custody based on deliberate fabrications and Wig's engineering. *Id*. at 833 n. 4. In fact, Respondents/Defendants have violated no fewer than three legal rules supported by case law, any one would be sufficient to invalidate DHS-ICE-ERO-New Orleans' directive to subject Mr. Bhatia to imminent immigration custody based on deliberate fabrications.

First, Defendants/Respondents violated the Take Care Clause by unilaterally creating a general policy, contrary to DHS directives, that is divorced from individualized, case-by-case enforcement discretion. (Comp. at ¶ 17) It is well-settled that a federal agency can make a "single-shot non-enforcement decision ... in the context of an individual case." *Crowley Caribbean Transp., Inc., v. Pena*, 37 F.3d 671, 676 (D.C. Cir. 1994). But it is equally well-settled that the DHS-ICE-ERO-New Orleans cannot adopt a "general policy" of detaining individuals by relying on fabrications and then figuring out, when they feel like, whether he or she should have been detained or not. *Chaney*, 470 U.S. at 844 n.4. Simply applying a "post-it" note on a Request and returning it without any individualized review related to the fabrications based on a general policy, is unlawful. DHS Secretary and others have purported to provide the "criteria" that is "to be considered" in the "exercise of prosecutorial discretion," in order to subject an individual to immigration custody. (Comp. Exs. 1, 2, 4, 5) In

9

practice, nonetheless, DHS-ICE-ERO-New Orleans all-but-automatically rubber-stamped and rejected the Request not to subject Mr. Bhatia to imminent immigration custody by relying on deliberate fabrications by stating "[c]annot honor this request until you are in immigration custody or proceedings," *see id.* Ex. 3, despite conceding on numerous occasions that they would be subjecting Mr. Bhatia to immigration custody based on deliberate fabrications and Wig's engineering. *Id.* at Comp. ¶ 4, n. 3. *See eg., United States v. Allen*, 954 F.2d 1160, 1166 (6th Cir. 1992) (evidence of "rubber-stamping" vitiates any claim of prosecutorial discretion).

And despite requesting reconsideration, DHS-ICE-ERO-New Orleans continues to ignore Congressional objectives and DHS directives to rubber-stamp and reject requests to review custody determinations that would be based on deliberate fabrications until an individual would be in immigration custody based on those deliberate undisputed fabrications. Comp. ¶¶ 18-26. The mere mention of "discretion" in subjecting Mr. Bhatia to imminent immigration custody does not render their actions lawful. As the Supreme Court has emphasized, "[t]he particular label [used by the agency] is not necessarily conclusive, for it is the substance of what the [agency] has purported to do or has done which is decisive." *CBS v. United States*, 316 U.S. 407, 416 (1942).

Second, Defendants/Respondents through DHS-ICE-ERO-New Orleans cannot hide behind their discretion to detain Mr. Bhatia when they openly violate federal law by subjecting Mr. Bhatia to immigration custody based on deliberate fabrications and Wig's engineering. *See eg., Adams v. Richardson*, 480 F.2d 1159, 1164 (D.C. Cir. 1973) (en banc) (federal agency cannot use enforcement and detention discretion to openly violate federal laws).

DHS-ICE-ERO-New Orleans' pattern and practice of subjecting individuals to immigration custody based on deliberate fabrications is particularly problematic because Congress and DHS's directives make clear that an individual cannot be subjected to immigration custody based on deliberate fabrications. This cannot be considered as prosecutorial discretion.

Third, it is well-settled that a blanket rejection of a Request not to subject an individual

10

to an imminent immigration custody based on undisputed deliberate fabrications could be legal only if it enjoys some form of congressional approval. Indeed, lack of such approval, one must conclude, makes DHS-ICE-ERO-New Orleans' pattern and practice unlawful. As it turns out, DHS-ICE-ERO-New Orleans' pattern and practice is fatal to Defendants/Respondents actions in this case. That is because, far from acquiescing in their efforts to subject Mr. Bhatia to immigration custody based on undisputed deliberate fabrications. Congress, the Courts and DHS have expressly adopted the opposite objective. Furthermore, there is no specific law or statute that authorizes detaining an individual based on undisputed deliberate fabrications. Surely, Congress cannot acquiesce in a unilateral executive program that dwarfs anything that Congress itself ever did using bicameralism and presentment.

As the Supreme Court has held, Article II does not "vest the [executive] a dispensing power, which has no countenance for its support in any part of the constitution; and would be clothing the [executive] with a power entirely to control the legislation of congress, and paralyze the administration of justice." *Kendall*, 37 U.S. (12 Pet.) at 613; *see also Youngstown*, 343 U.S. at 587 ("[T]he President's power to see that the laws are faithfully executed refutes the idea that he is to be a lawmaker.") In this case it get's worse, here, DHS-ICE-ERO-New Orleans discards the DHS Secretary's November 2014 directive that was endorsed by President Obama, and is unilaterally implementing its own directive to subject Mr. Bhatia to an unlawful imminent immigration custody based on deliberate fabrications is more than sufficent to show that Defendants/Respondents through the DHS-ICE-ERO-New Orleans are attempting "to control legislation of [C]ongress," *Kendall*, 37 U.S. (12 Pet.) at 613.

Mr. Bhatia is therefore likely to succeed on the merits of his claim under the Take Care Clause.

B.   Defendants/Respondents Violation of the Due Process Clause.

The Fifth Amendment's due process clause protects against federal government's deprivation of life, liberty or property without fair and adequate procedures. *Mathews v. Eldridge*, 424 U.S. 319 (1976).  Subjecting Mr. Bhatia to immigration custody based on

11

deliberate fabrications and Wig's engineering without an individualized hearing indisputably denies him his liberty rights secured by the procedural due process clause. *Cf. Demore v. Kim*, 538 U.S. 510 (2003).  Further, the  Fifth Amendment's due process clause also protects against government action infringing liberty interests by subjecting him to immigration custody based on deliberate fabrications, no matter what process is provided, where the infringement is not narrowly tailored to serve a compelling government interest. *See Reno v. Flores*, 507 U.S. 292, 301-302 (1993). This fundamental right to substantive due process prevents the government from engaging in conduct that interferes with "the concept of ordered liberty." *United States v. Salerno*, 481 U.S. 739, 746 (1987).

"[A]ll courts that have directly confronted the question ... agree that the deliberate manufacture of false evidence [to detain an individual] contravenes the Due Process Clause." *Whitlock v. Brueggemann*, 682 F. 3d 567, 585 (7th Cir. 2012), *cert. denied* 133 S. Ct. 981 (2013). This judicial agreement includes all circuit courts. *See Limone v. Condon*, 372 F. 3d 39, 44-45 (1st Cir. 2004) (describing as "self-evident" that deliberate fabrication of evidence is unconstitutional); *Ricciuti v. NYC Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997); *Washington v. Wilmore*, 407 F.3d 274, 282 (4th Cir. 2005); *Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir. 2003) (en banc); *Gregory v. City of Louisville*, 444 F.3d 725, 744-45 (6th Cir. 2006); *Whitlock*, 682 F. 3d at 585-86; *Wilson v. Lawrence Cnty.*, 260 F.3d 946, 954 (8th Cir. 2001); *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir 2001) (en banc); *Pierce v. Gilchrist*, 359 F. 3d 1279, 1293 (10th Cir. 2004); *Jones v. Cannon*, 174 F.3d 1271, 1289 (11th Cir. 1999). No circuits depart from this rule. [11]

To be sure, courts indeed uniformly agree that the right to be free from custody based on deliberate fabrications has been clearly established. *See Limone*, 372 F. 3d at 45 (holding that deliberate fabrication of evidence was clearly established as unconstitutional at least by 1967); *Washington*, 407 F. 3d at 283-84 (at least by 1983); *Brown v. Miller*, 519  F.3d 231, 237 (5th Cir. 2008) (at least by 1984); *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1281 (11th Cir. 2002) (at

---

11 In *Yarris v. County of Deleware*, 465 F. 3d 129, 138-39 (3d Cir. 2006), the Court rejected a claim for absolute immunity based on allegations that prosecutors had fabricated a false confession, but did not directly address whether the claim itself was actionable.

least by 1984); see also *Whitlock*, 682 F.3d at 581-82, 585-86 (7th Cir. 2012) (citing *Mooney v. Holohan*, 294 U.S. 103 (1935)), and its progeny to hold fabrication was clearly established as unconstitutional well before the 1980s); *Wilson*, 260 F.3d at 954-55 (same); *Pierce*, 359 F.3d at 1299-300 (holding fabrication clearly established as unconstitutional "[l]ong before" 1986). Mr. Bhatia is unaware of any circuit court ever holding that the use of deliberately fabricated evidence to subject a non-citizen to immigration custody was not clearly established as unconstitutional-at *any* time.

This is not surprising, as the Supreme Court has recognized this principle for the last 75 years. *See, e.g., Miller v. Pate*, 386 U.S. 1, 7 (1967) ("More than 30 years ago this Court held that the Fourteenth Amendment cannot tolerate a state criminal conviction obtained by the knowing use of false evidence.") (citing *Mooney*, 294 U.S. 103). *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (calling the principle that the government "may not knowingly use false evidence...to obtain a tainted conviction...implicit in any concept of ordered liberty").

8 U.S.C. § 1226(c) requires the Attorney General of the United States to detain certain classes of aliens during the pendency of their removal proceedings, including aliens who have been convicted of an aggravated felony. 8 U.S.C. §§ 1226(c)(1) & 1227(a)(2)(A)(iii). In *Kim*, the Supreme Court upheld the constitutionality of Section 1226(c), finding that "Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons such as respondent be detained for the brief period necessary for their removal proceedings." *Demore v. Kim*, 538 U.S. at ----, 123 S.Ct. at 1712 (emphasis added).

While a majority of the *Kim* Court held that the alien's Fifth Amendment rights were not violated by his detention, five justices agreed that detention pursuant to Section 1226(c) could become unconstitutional under certain circumstances. In fact a majority of the Court held that under certain circumstances a lawful permanent resident alien subject to removal proceedings would be entitled to an individualized hearing and a finding that detention is necessary to serve some governmental interest. *Id.*

13

Four justices held that the Fifth Amendment requires individual assessment of flight risk and dangerousness for all lawful permanent resident aliens subject to removal who contest their deportability.  As Justice Kennedy concluded, an alien "could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Id.* at 1722 (Kennedy, J., concurring).  For example, "[w]ere there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." *Id.* Thus, when it is undisputed that Mr. Bhatia will be subjected to imminent immigration custody based on deliberate fabrications, "the detention would not be to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." *Id.* at 1708. And hence, Mr. Bhatia should not have to wait until he is in immigration custody to challenge its validity

Justices Souter, Stevens, and Ginsburg concluded that the Due Process Clause conditions a potentially lengthy detention of a lawful permanent resident subject to removal proceedings on a hearing and an impartial decisionmaker's finding that detention is necessary to further a governmental purpose. *Id.* at 1731 (Souter, Stevens, Ginsburg, J., concurring in Part I and dissenting in Part II). More specifically, these three justices held that "the Fifth Amendment permits detention only where 'heightened, substantive due process scrutiny' finds a 'sufficiently compelling' governmental need." *Id.* at 1731-32 (quoting *Flores*, 507 U.S. at 316).  In his dissent, Justice Breyer interpreted Section 1226(c) as requiring the government to permit a detained alien who claims that he is not deportable to seek an individualized assessment of flight risk and dangerousness to support his detention, provided that the alien's claim is (1) not interposed solely for purposes of delay and (2) raises a question of law or fact that is not insubstantial. Id. at 1747 (Breyer, J., dissenting).

In keeping with these precepts, Mr. Bhatia should be afforded an individualized hearing before he is placed in immigration custody based on deliberate fabrications and Wig's

14

engineering because, analogously, courts have also consistently recognized an independent cause or claim for fabrication of evidence under the Due Process Clause as distinct from other separate constitutional claims. *See eg., Ricciuti,* 124 F. 3d at 130 (rejecting defendants' argument that probable cause precluded fabrication claim and holding that "[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983") *Castellano,* 352 f. 3d at 955 (recognizing § 1983 cause of action for fabrication that is distinct from malicious prosecution, and reversing verdict where jury instructions "limited the jury's use of evidence of fabricated evidence...to its resolution of the issues of malice and causation' on a malicious prosecution claim); *Pierce,* 359 F. 3d at 1286-88, 1293-94 (rejecting argument that common-law requirements for malicious prosecution control independent claims for fabrication of evidence); *Stemler v. City of Florence,* 126 F. 3d 856, 872 (6th Cir. 1997)(differentiating a malicious-prosecution claim from a "claim of fabrication of evidence, [which] does not require a conclusion that the state did not have probable cause to prosecute the claimant.")

Finally, a number of circuit courts have specifically endorsed the precise claim Mr. Bhatia brings here: that Defendants/Respondents are prohibited to deliberately rely on fabrications to subject a non-citizen to immigration custody and to further buttress it's seriousness, an officer who knowingly subjects the non-citizen to immigration custody based on those fabrications would be personally liable. Under these circumstances, the Fifth Amendment dictates that Mr. Bhatia should be entitled to an individualized determination that his detention based on deliberate fabrications is necessary to further a sufficiently compelling governmental need before he is placed in immigration custody based on deliberate fabrications. *See, eg. Ricciuti,* 124 F.3d at 129-30 (officers may be held liable for "conspiring to fabricate and forwarded to prosecutors a known false confession almost certain to influence a "jury's verdict"); *Washington,* 407 F.3d at 282 (officer may be held liable

15

for fabricating "that [plaintiff] possessed nonpublic knowledge about a crime") *Gregory,* 444 F. 3d at 741-42, 759-60 (officers could be held liable for "falsely documenting and misrepresenting to the prosecutors before trial that they did not tell [Plaintiff] nonpublic information about the crime only the perpetrator could know"); *Lowery v. Cnty. Of Riley,* 522 F. 3d 1086, 1090-92 (10th Cir. 2008) (officers could be held liable for falsely "represent[ing] in their contemporaneous report and in their communications with the prosecutor that [plaintiff's] confession was credible because he revealed, without prompting or suggestion, nonpublic facts that only the perpetrator of the rape could have known" as well as for falsely reporting "other 'admissions' that [plaintiff] did not, in fact, make").

Mr. Bhatia is therefore likely to succeed on the merits of his claim under the Due Process Clause.

C.    Defendants/Respondents Violation of the Administrative Procedures Act (APA).

The APA allows an individual to sue a federal agency based on unlawful agency action. The APA provides review to "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." *See eg.,* Memorandum from Peter Vincent, Principal Legal Advisor, U.S. Immigration and Customs Enforcement, *on Case-by-Case Review of all Incoming cases to all Chief Counsel and Office of Principal Legal Advisor* at 2 (November 17, 2011) available at www.ice.gov/doclib/foia/prosecutorial-diecretion/case-by-case-review-of-incoming-cases-memorandum.pdf. Section 704 identifies the actions reviewable as '[a]gency action made reviewable by statute and final agency action for which there is no other remedy in court..." 5 U.S.C. § 704. The APA has four central purposes: (1) to require agencies to keep the public informed of their organization, procedures and rules; (2) to provide public participation in the rule-making process; (3) to establish uniform standards for the conduct of formal rule-making and adjudication; and (4) define the scope of judicial review. *See* Gary J. Edles, *The Continuing Need for an Administrative Conference,* 50 Admin. L. Rev. 101, 107 (1998).  The judicial review provisions of the APA are codified at 5 U.S.C. §§ 701-706.

16

The breadth of judicial review under the APA is illustrated by the seminal Supreme Court case of *Abbot Laboratories v. Gardener*, 387 U.S. 136 (1967). *Abbot* involved thirty-seven individual drug manufacturers and once pharmaceutical association challenging regulations requiring that labels and advertisements for prescription drugs bearing proprietary names for the drugs or the ingredients carry the corresponding "established name" every time the name is used. *Id.* at 137-38. The petitioners argued that the regulation exceeded the Commissioner's authority under the statute and were subject to judicial resolution. *Id.* at 139. The Government argued that, pursuant to the first APA exception, no review was available because the governing food and drug statute includes a special review procedures for some regulations and therefore excluded review of others. *Id.* at 140-41. The Court held that judicial review was available under the APA and the impact of the food and drug regulations on the petitioners was "sufficiently direct and immediate" *Id.* at 152. The Court noted that '[t]he legislative material elucidating that seminal act [the APA] manifests a congressional intention that it cover a broad spectrum of administrative actions, and this Court has echoed that theme by noting that the . . . 'generous review provisions' must be given a "hospitable" interpretation." *Id.* at 140. APA review has further received a "hospitable" interpretation in immigration cases too. *See eg., Judulang v. Holder*, 132 S.Ct. 476, 477 (2011); *Kucana v. Holder*, 130 S.Ct. 827, 840 (2010); *INS v. Abudu*, 485 U.S. 94, 105 (1988).

When this court assumes jurisdiction over DHS-ICE-ERO-New Orleans's discretion to subject Mr. Bhatia to imminent immigration custody based on deliberate fabrications and Wig's engineering. Section 706 of the APA instructs a reviewing court to set aside agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. In many instances a federal court reviewing an immigration adjudicator's decision applies the arbitrary and capricious standard. For example, although a grant of continuance is within the discretion of an immigration court, it is well-settled that federal courts have jurisdiction to review continuance decisions. *Masiah v. Mukasey*, 536 F.3d 370, 376 (5th Cir. 2008). In *Hashmi v. Attorney General of the U.S.*, 531 F.3d 256, 262 (3rd Cir. 2008),

17

removal proceedings were continued several times for the petitioner Hashmi while his marriage-based petition was pending. *Id.* at 257. After eighteen months, the immigration court denied another continuance because the case had been pending far longer than the eight-month period suggested by the "case-completion goals" set by the DOJ. *Id.* at 257-58. The circuit court found that the immigration court's denial of the motion for a continuance based on case-completion goals rather than on the facts and circumstance of *Hashmi*'s case was arbitrary and an abuse of discretion. *Id.*

Similarly, on November 20, 2014, Homeland Security Secretary, Jeh Charles Johnson directed all agency personal: "[i]n the immigration context, [to exercise] prosecutorial discretion [] not only to the decision to issue * * * a Notice to Appear, but also * * * *whom to detain* * * *. While DHS may exercise prosecutorial discretion at any stage of an enforcement proceeding, it is generally preferable to exercise such discretion *as early in the case* or proceeding as possible in order to preserve government resources * * *" Comp. at ¶ 20.

Around July 27, 2015, Mr. Bhatia made an extensive and detailed submission requesting DHS-ICE-ERO – New Orleans Field Office that as on over 27 occasions ICE/DHS have conceded that their records are based on fabrications, Mr. Bhatia should not be subjected to immigration custody. *Id.* at ¶ 14. Around July 30, 2015, the submission was returned. Attached to it, based on a "post-it" note from DHS/ICE/ERO – New Orleans, contrary to November 2014 and other directives, held "[c]annot honor this request until you are in immigration custody or proceedings." *Id.* at ¶ 17. Despite requesting a reconsideration, DHS-ICE-ERO-New Orleans continued to hold that Mr. Bhatia would be subjected in immigration custody based on deliberate fabrications.

If DHS-ICE-ERO-New Orleans "rule," to honor a request not to subject an individual to ICE custody based on deliberate fabrications only after the individual is in ICE custody is a "legislative rule" promulgated by DHS-ICE-ERO-New Orleans, then it must comply with specific procedural and substantive requirements under the APA. Procedurally, DHS-ICE-ERO-New Orleans, an agency, cannot promulgate a rule without notice-and-comment. 5 U.S.C. § 553.

18

Substantively, they cannot promulgate a rule that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" – that is, DHS-ICE-ERO-New Orleans' "rule" cannot conflict with what Congress has said or DHS directives instruct. *Id*. § 706(2)(A).

Thus, Mr. Bhatia has two APA claims. First, DHS-ICE-ERO-New Orleans "rule," to honor a request not to subject an individual to ICE custody based on deliberate fabrications only after the individual is in ICE custody is a "legislative rule" promulgated by DHS-ICE-ERO-New Orleans' to which notice-and-comment requirements apply; accordingly, even Defendants/Respondents must concede it is unlawful because they have failed to follow APA's notice-and-comment procedures. Second and independently, the "rule" is also unlawful because it conflicts with the immigration and other statutes.

DHS-ICE-ERO-New Orleans's "legislative rule" must comply with the APA's procedural and substantive requirements for four independent reasons:

First, the DHS-ICE-ERO-New Orleans "legislative rule" affects Mr. Bhatia's rights. *Chrysler Corp. v. Brown*, 441 U.S. 281, 301-03 (1979); *Morton v. Ruiz*, 415 U.S. 199, 232 (1974). In *Ruiz*, for example, the Supreme Court held that the Bureau of Indian Affairs could not arbitrarily create "eligibility requirements" for allocating funds to Native Americans without complying with the APA. *Id*. at 230. The Court reasoned that, if the BIA wanted to deny funds to Native Americans living outside of reservations, its efforts would affect individual rights of Native Americans – and hence must be done in accordance with the APA. *Id*. at 236. Likewise, DHS-ICE-ERO-New Orleans have created a "rule," to only honor a request not to place an individual in ICE custody based on deliberate fabrications only after the individual is in ICE custody based on those fabrications. Indeed, the DHS-ICE-ERO-New Orleans rule has a more profound effect: rather than simply affecting access to money, the DHS-ICE-ERO-New Orleans "legislative rule" effects physical detention based on deliberate fabrications. If funding eligibility triggers the APA, it follows *a fortiori* that physical detention based on deliberate fabrications does.

Second, DHS-ICE-ERO-New Orleans "rule," to honor a request not to subject an

individual to ICE custody based on deliberate fabrications only after the individual is in ICE custody is a "legislative rule" because it is binding on DHS-ICE-ERO-New Orleans's officials despite clear directive from DHS Secretary, President Obama, and others to the contrary. A "rule" is substantive and hence must comply with the APA, if either it appears on its face to be binding, or is applied by the agency in a way that indicates it is binding." *General Elec. Co., v. EPA*, 290 F.3d 377, 383 (D.C. Cir. 2002) (citation omitted). And DHS-ICE-ERO-New Orleans's "legislative rule" meets both those criteria. "[F]rom beginning to end [it] reads like a ukase. It commands, it requires, it dictates." *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1023 (D.C. 2000). Evidently, there is no doubt that DHS-ICE-ERO-New Orleans's edit, contrary to DHS directives and well-settled precedent, binds the agents as a practical matter.

Third, DHS-ICE-ERO-New Orleans "rule," to honor a request not to subject an individual to ICE custody based on deliberate fabrications only after the individual is in ICE custody is a "legislative rule" promulgated by DHS-ICE-ERO-New Orleans' because it "puts a stamp of agency approval or disapproval on a given type of behavior." *Chamber of Commerce v. DOL*, 174 F.3d 206, 212 (D.C. Cir. 1999). In *Chamber of Commerce,* the Court of Appeals held that the Labor Department promulgated a substantive rule when it told its employes that they could avoid 70-90% of workplace inspections if they participated in a new "Cooperative Compliance Program." *Id.* at 208. So too here; the Defendants/Respondents, through the DHS-ICE-ERO-New Orleans have told its agents/officers that there is no need to honor a request not to subject an individual to immigration custody based on deliberate fabrications until after he/she is in immigration custody. Consequently, Defendants/Respondents have put their "stamp of approval" on violations by the agents/officers.

Finally, DHS-ICE-ERO-New Orleans' "rule," to honor a request not to subject an individual to ICE custody based on deliberate fabrications only after the individual is in ICE custody is a "legislative rule" promulgated by DHS-ICE-ERO-New Orleans' because it cannot possibly be construed as an *interpretive* rule. "Generally speaking, it seems to be established that 'regulations,' 'substantive rules', or 'legislative rules' are those which create law; whereas

20

interpretative rules are statements as to what the administrative officer thinks the statue or regulation means." *Shell Offshore Inc. v. Babbitt*, 238 F.3d 622, 628 (5th Cir. 2001). There is no conceivable argument that DHS-ICE-ERO-New Orleans "rule," to honor a request not to subject an individual to ICE custody based on deliberate fabrications only after the individual is in ICE custody rests on an *interpretation* of anything. At no point does DHS-ICE-ERO-New Orleans even purport to interpret any law. To the contrary, the whole point of DHS-ICE-ERO-New Orleans' "legislative rule" is that DHS-ICE-ERO-New Orleans wanted to create a new law because Congress, DHS Secretary and others have not done so. Contrary to Secretary Johnson and others' directive, DHS-ICE-ERO-New Orleans stated: "Cannot honor this request until you are in immigration custody or proceedings." *See* Comp. ¶ 17.

Because DHS-ICE-ERO-New Orleans "rule," to honor a request not to subject an individual to ICE custody based on deliberate fabrications only after the individual is in ICE custody is a "legislative rule" promulgated by DHS-ICE-ERO-New Orleans, it must comply with APA's procedural requirements. *Eg. Ruiz*, 415 U.S. at 230. But the "legislative rule" is procedurally unlawful because DHS-ICE-ERO-New Orleans promulgated it without notice-and-comment rule-making – a prerequisite for rules that impacts substantive rights and duties. *See, e.g., National Mining Ass'n v. McCarthy*, 758 F.3d 243, 251-52 (D.C. Cir. 2014).

Even if Defendants/Respondents and/or DHS-ICE-ERO-New Orleans did comply with the APA's notice-and-comment requirements, they *still* could not lawfully promulgate their "legislative rule." That is because their actions are not "in accordance with" the laws enacted by Congress. 5 U.S.C. § 706(2)(a). Contrary to well-settled precedent, DHS-ICE-ERO-New Orleans now require a non-citizen to be subjected to immigration custody even when Defendants/Respondents and others concede that that custody would be based on deliberate fabrications. Moreover, as it is undeniable that the mandatory detention provision, 8 U.S.C. § 1226(c) was not intended to subject an individual to immigration custody based on deliberate fabrications. That is enough to foreclose DHS-ICE-ERO-New Orleans from adopting a policy that has been rejected. *See eg. Chevron, U.S.A., Inc., v. NRDC*, 467 U.S. 837, 842 (1984) ("If the

21

intent of Congress is clear, that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."); *API v. EPA*, 198 F.3d 275, 278 (D.C. Cir. 2000) ("[I]f Congress makes an explicit provision for apples, oranges and bananas, it is most unlikely to have meant grapefruit.").

In short, Defendants/Respondents' actions are unlawful under both the U.S. Constitution and APA. And under either claim, the appropriate remedy is a preliminary injunction against DHS-ICE-ERO-New Orleans' "rule," to honor a request not to subject an individual in ICE custody based on deliberate fabrications only after the individual is in ICE custody. *See eg., Youngstown*, 343 U.S. at 584 (appropriate remedy for Take Care violation is preliminary injunction); *Nat'l Ass'n of Farmworkers Org. v. Marshall*, 628 F.2d 604, 606 (D.C. Cir. 1980) (appropriate remedy for procedural APA claim is preliminary injunction); *Role Models Am., Inc., v. White*, 317 F.3d 327, 328-29 (D.C. Cir. 2003)(appropriate remedy for substantive and procedural APA claim is preliminary injunction).

## II.   MR. BHATIA WILL INCUR IRREPARABLE INJURIES

In the absence of the Court's emergency intervention, Mr. Bhatia will suffer irreparable injuries. DHS-ICE-ERO-New Orleans' "rule," to honor Mr. Bhatia's request not to subject him to ICE custody based on deliberate fabrications and Wig's engineering only after Mr. Bhatia is in ICE custody will cause him to be unlawfully placed in immigration custody, as soon as he would become eligible for release from criminal custody. Comp. ¶ 17. Mr. Bhatia is entitled not to be subjected to any custody based on material fabrications. Furthermore, DHS-ICE-ERO-New Orleans' "rule," to honor Mr. Bhatia's request not to subject him to ICE custody based on deliberate fabrications and Wig's engineering only after Mr. Bhatia is in ICE custody – among other things – would further irreparably injure Mr. Bhatia because DHS-ICE-ERO-New Orleans provides no avenue for Mr. Bhatia to challenge their unlawful detention until after he is placed in their custody. Nor does DHS-ICE-ERO-New Orleans provide any indication when and how that review would be conducted. Despite drawing Defendants/Respondents' attention to Mr. Bhatia's plight, they have made no attempt to

22

redress the statutory and constitutional problems. Furthermore, despite requesting reconsideration, DHS-ICE-ERO-New Orleans have made it absolutely clear that their unlawful behavior – deliberately relying on fabrication to cause an imminent immigration custody – will not cease but continue to recur. *Id.* Comp. at ¶ 26. That is the paradigmatic irreparable injury, *see eg, Janvey v. Alguire,* 647 F.3d 585, 600-01 (5th Cir. 2001) and it is more than sufficient to necessitate a preliminary injunction now that Defendants/Respondents have made it clear that DHS-ICE-ERO-New Orleans' "rule," to honor Mr. Bhatia's request not to subject him to ICE custody based on deliberate fabrications and Wig's engineering will only be after Mr. Bhatia is in ICE custody. As the Supreme Court has held. "[o]ne does not have to await the consummation of threatened injury to obtain preventive relief." *Blum v. Yaretsky,* 457 U.S. 991, 1000 (1982) (internal quotation marks omitted).

Mr. Bhatia's injuries do not stop there. The Supreme Court has held that Defendants/Respondents have virtually a monopoly on determining who would be subjected to immigration custody. *Demore v. Kim,* 538 U.S. 510 (2003). Which means that Mr. Bhatia is dependent on Defendants/Respondents – through DHS-ICE-ERO-New Orleans to faithfully and accurately determine whether he should be subjected to immigration custody based on deliberate fabrications and Wig's engineering. As Defendants/Respondents, through DHS-ICE-ERO-New Orleans, have clearly indicated that they would abandon that responsibility and subject Mr. Bhatia to immigration custody by relying on deliberate fabrications and Wig's engineering, it would be impossible for anyone to unscramble the egg. Once Mr. Bhatia is in DHS-ICE-ERO-New Orleans' immigration custody based on those fabrications, it is difficult to imagine how the time he would be unlawfully detained could be reversed. In a procedural rights case, such as in Mr. Bhatia's case, the size of the injury is not important, rather it is the fact of the injury. *Eg., Massachusetts v. EPA,* 549 U.S. 497, 518, 525-26 (2007). *FTC v. Dean Foods Co.,* 384 U.S. 597, 606 n.5 (1966) (difficulty in "unscramb[ling]" egg justifies injunctive relief); *cf. Christopher Village, Ltd., Partnership v. Retsinas,* 190 F.3d 310, 314-15 (5th Cir. 1999) (finding dispute moot where only requested relief "would amount to an impossible request for this

court to 'unscramble the eggs'"). Therefore, Mr. Bhatia would be irreparably injured.

**III.**  **THE BALANCE OF EQUITIES TIPS IN FAVOR OF GRANTING THE INJUNCTION.**

Defendants/Respondents cannot claim a countervailing injury from a preliminary injunction when DHS-ICE-ERO-New Orleans' are directed to honor a request not to subject an individual to ICE custody based on deliberate fabrications before the individual is in ICE custody. On the contrary the balance of equities tips in favor of granting the preliminary injuncitons. First, on over 27 occasions – dating as far back as September 2010 and as recently as August 2015 – Defendants/Respondents have conceded that their reports and records are based on deliberate fabrications and Wig's engineering; Comp., at ¶ 15(6);

Second, 8 U.S.C. §§ 1103(a), 1226(c), prohibits subjecting an individual to immigration detention based on fabrications; Comp. at ¶ 32.

Third, the June 11, 2011 memorandum by prior ICE Director John Morton entitled, *Prosecutorial Discretion: Certain Victims, Witnesses, and Plaintiff*s, prohibits subjecting an individual to immigration detention based on deliberate fabrications; Comp. at ¶ 12

(4) The November 20, 2014 memorandum, entitled *Policies for the Apprehension, Detention and Removal of Undocumented Immigrant*, prohibits subjecting an individual to immigration detention based on deliberate fabrications; Comp. at ¶ 12

(5) April 6, 2015, Memorandum by Riah Ramlogan, Acting Principal Legal Advisor, ICE, explaining the impact of Secretary Johnson's Memorandum on issues related to Immigration Custody or Proceedings, prohibits subjecting an individual to immigration detention based on deliberate fabrications; Comp. at ¶ 19

(6) April 6, 2015, Memorandum by Brian M. O' Leary, Chief Immigration Judge, explaining the impact of Secretary Johnson's Memorandum on immigration court hearing procedures going forward, prohibits subjecting an individual to immigration detention based on deliberate fabrications; Comp. at ¶ 19, and,

(7) Obviously President Obama's confirmation on February 25, 2015, that "[a]ny individual ICE official or border patrol who aren't paying attention to our new directives"

would "be answerable to the head of the [DHS]," and if employees "don't follow the policy, there are going to be consequences to it," Comp. at ¶ 25, prohibits subjecting an individual to immigration detention based on deliberate fabrications.

There is no emergency nor new law that has forced Defendants/Respondents through DHS-ICE-ERO-New Orleans' to establish a rule to honor Mr. Bhatia's request not to subject him to ICE custody based on deliberate fabrications *after* he is in ICE custody based on those fabrications. The only thing that appears to have forced DHS-ICE-ERO-New Orleans to establish their unlawful "rule" is their appetite for following Congress', President Obama; Secretary Johnson; ICE Director John Morton; Acting Principal Legal Advisor, ICE, Riah Ramlogan; and Chief Immigration Judge, Brian M. O' Leary preferred immigration policies and objectives. Surely that cannot justify insulating a unilateral act of lawmaking that voters and Congress have rejected.

## IV.  THE PUBLIC INTEREST NECESSITATES A PRELIMINARY INJUNCTION.

Finally, the public interest strongly warrants a preliminary injunction. It will be difficult to unravel Defendants/Respondents, through DHS-ICE-ERO-New Orleans' "rule," to honor a request not to subject an individual to ICE custody based on deliberate fabrications *after* the individual is in ICE custody based on those fabrications, if they are allowed to continue implementing it. And if DHS-ICE-ERO-New Orleans gets away with their "rule" to subject non-citizens to imminent immigration custody based on deliberate fabrications, then other agencies, too, would be able to remake the United States Code by declining to follow it. Take just a few examples:

- Because the Internal Revenue Service can audit only 1% of tax returns every year, an office of the IRS could announce a "rule" in order to meet their quota in which a number of taxpayers would be audited based on deliberate fabrications with impunity, regardless of the consequences.

- Because the Environmental Protection Agency can inspect only 18,000 sites every year, a office of the EPA could announce a "rule" in order to meet their quota in which a number of sites would be inspected based on deliberate

25

fabrications with impunity, regardless of the consequences.

- Because the Occupational Safety and Health Administration can inspect on 0.5% of all workplaces every year, an office of OSHA could announce a "rule" in order to meet their quota in which a number of workplaces would be inspected based on deliberate fabrications with impunity, regardless of the consequences.

Each of those actions would be at least as well grounded in congressional policy choices as DHS-ICE-ERO-New Orleans "rule" or "criteria," contrary to DHS directives. And in reality, Defendants/Respondents' actions are even more aggressive than those hypothetical examples. The Defendants/Respondents are rewarding unlawful behavior to detain an individual based on deliberate fabrications with more than non-enforcement of criminal laws; they are also giving agents and officers *carte blanche* to subject non-citizen's to immigration custody based on deliberate fabrications with impunity.

If permitted, the idea that the Constitution allows such unilateral law making would permanently and profoundly reshape the separation of powers in this country. Before the Defendants/Respondents or DHS-ICE-ERO-New Orleans are allowed to walk us down that path, a preliminary injunction is necessary to ensure that Defendants/Respondents, including DHS-ICE-ERO-New Orleans, honor Mr. Bhatia's request not to subject him to ICE custody based on deliberate fabrications and Wig's engineering *before* he is placed in ICE custody, and allow the court an opportunity to make reasoned decisions about the lawfulness of DHS-ICE-ERO-New Orleans' path, contrary to Congressional objectives, DHS directives and well-settled precedent.

Critically, a preliminary injunction would also serve the public interest by protecting the integrated statutory policy of the Legislature rather allow a Field Office for ICE go off on its own and implement its own "rules." The Fifth Circuit, indeed, has given extraordinary weight to issues related to public interests in a suit involving more than a mere private dispute, *United States v. Marine Shale Processors*, 81 F.3d 1329, 1359 (5th Cir. 1996) citing *Virginian Railway v. System Federation No. 40, AFL*, 300 U.S. 515, 552, (1937). This Court, too,

26

should follow suit.

## CONCLUSION

Mr. Bhatia's motion for a preliminary injunction should be granted.

Dated October 12 2015                          Respectfully submitted,

Lal Bhatia
Reg. No.: 97562-011
Adams County Correctional Center
P.O. Box 1600
Washington, MS 39190

27